UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Evanston Insurance Company,

      Plaintiff,

v.                                                          Case No.: 11-14102

Residential Private Care, LLC, a Michigan          Honorable Sean F. Cox
Limited Liability Company d/b/a Bridges Personal
Care Services, Corinne Weddell, and Jean Roberts,

      Defendants.

_____/

**OPINION & ORDER GRANTING**
**RESIDENTIAL PRIVATE CARE'S MOTION TO DISMISS**

      This insurance dispute arises from an underlying lawsuit filed by Jean Roberts in

Oakland County Circuit Court against Residential Private Care, doing business as Bridges

Personal Care Services, and Corinne Weddell, an employee of Residential Private Care. After

Roberts filed the underlying lawsuit, Plaintiff Evanston Insurance Company brought this action

for declaratory relief against Residential Private Care, Weddell, and Roberts.[1] The matter is

currently before the Court on Residential Private Care's motion to dismiss, Evanston Insurance

Co.'s motion for summary judgment, and Residential Private Care's cross-motion for summary

judgment. The parties have briefed the issues and the Court heard oral argument on May 10,

2012. For the reasons stated below, the Court shall grant Residential Private Care's motion to

dismiss for lack of subject matter jurisdiction. As a result, Evanston Insurance Company's

_____

[1]Defendant Corinne Weddell has not made an appearance in this action. On February 1,
2012, Evanston received a Clerk's Entry of Default as to Corinne Weddell. (D.E. No. 15).

1

motion for summary judgment, and Residential Private Care's cross-motion for summary judgment shall be denied as moot.

**BACKGROUND**

I.   Factual Background:

Residential Private Care, L.L.C. ("Residential"), operating under the assumed name Bridges Personal Care ("Bridges"), is a Michigan company engaged in the business of providing home personal care, such as bathing, housekeeping, and meal preparation services.  On its website, Bridges represents that its caregivers are "bonded and insured."  (*See* Evanston Stmt. of Facts, D.E. No. 18, Ex. 4).

Corinne Weddell ("Weddell") is a Michigan resident and is, or was, an employee of Residential.

Evanston Insurance Company ("Evanston"), an Illinois corporation, issued an insurance policy (the "Policy") to Residential that included Specified Medical Professions General Liability Insurance and Specified Medical Professions Professional Liability Coverage.  (Policy, D.E. No. 19, Ex. C).  The Policy was effective from April 13, 2010 to August 1, 2011.  (*Id.*).

The Specified Medical Professions General Liability Coverage includes coverage for "any Employee of the Named Insured. . . solely while acting in within the scope of his/her employment."  (Policy at 7).

On January 18, 2012 Roberts filed a First Amended Complaint against Residential and Weddell in state court (the "underlying lawsuit").  (Evanston Stmt. of Facts at ¶ 2).  A copy of the complaint (the "Underlying Complaint") filed in the underlying lawsuit is attached as Exhibit 2 to Evanston's Statement of Material Facts Not in Dispute.  In the Underlying Complaint,

Roberts alleges the following:

- On January 27, 2011, Roberts entered into a contract with Bridges for private residential care.  (Underlying Complaint at ¶ 6).

- "In entering into the Agreement, [Roberts] reasonably relied on Bridges' representation that its caregivers are 'bonded and insured.'" (*Id*. at ¶ 9).

- "As part of the Agreement, and/or to induce [Roberts] to enter into the Agreement, Bridges agreed to indemnify and secure [Roberts] against loss or damage caused by its caregiver(s)."  (*Id*. at ¶ 13).

- "On or about April 5, 2011, Weddell was the caregiver providing personal care services to [Roberts] as an employee or agent acting on behalf of Bridges, pursuant to the Agreement."  (*Id.* at ¶ 16).

- "On or about April 5, 2011, Weddell was the only person other than [Roberts] who was at [Roberts'] residence."  (*Id.* at ¶ 18).

- "There was no forced entry or unlawful entry into Plaintiff's residence on or about April 5, 2011, nor any time prior thereto."  (*Id*. ¶ 19).

- "On or about April 5, 2011, certain valuable jewelry and other personal property were stolen, removed or converted from [Roberts'] home."  (*Id*. at ¶ 20).

- "The value of the jewelry and/or personal property which were stolen or converted from [Roberts'] home was $201,250.00" (*Id*. at ¶ 21).

- As a result of the property loss that occurred on April 5, 2011, Roberts' homeowner's insurer paid Roberts $61,880.00, which is the maximum amount of coverage available under her homeowner's insurance policy.  Roberts' total remaining net loss is $139,370.00  (*Id*. at 23).

In the underlying lawsuit, Roberts brings the following causes of action: Count I – Conversion (As to Defendant Weddell); Count II – Negligence (As to Defendant Residential Private Care, LLC); Count III – Negligence (As to Defendant Weddell); Count IV – Breach of Contract (As to Defendant Residential Private Care, LLC); Count V – Indemnification (As to Defendant Residential Private Care, LLC); and Count VI – Violation of Consumer Protection Act (As to Residential Private Care, LLC).

3

After Roberts filed her complaint against Residential and Weddell in state court, Residential notified Evanston of the underlying lawsuit. Evanston subsequently denied coverage to Residential and refused to defend Residential in the underlying lawsuit.

II.     Procedural Background:

On September 20, 2011, Evanston filed its Complaint for Declaratory Relief on the basis of diversity jurisdiction. (D.E. No. 1). In lieu of an answer to Evanston's complaint, Residential filed a motion to dismiss for lack of subject matter jurisdiction on October 25, 2011. (Residential Mtn. to Dismiss, D. E. No. 8). Roberts filed a concurrence with Residential's motion to dismiss on November 15, 2011. (D.E. No. 10).

On February 14, 2012, Evanston filed a motion for summary judgment. (Evanston Mtn. for SJ, D.E. No. 17). Residential filed a combined answer to Evanston's motion for summary judgment and a cross-motion for summary judgment on March 6, 2012. (Residential Mtn. for SJ, D.E. No. 19). On March 27, 2012, Roberts filed a short brief in opposition to Evanston's motion, and concurred with Residential's cross-motion for summary judgment. (D.E. Nos. 25, 26).

**ANALYSIS**

I.     Residential's Motion to Dismiss:

In its motion to dismiss, Residential contends that this Court should decline to accept jurisdiction over this case because: (1) "issues of insurance contract interpretation are questions of state law with which Michigan Courts are more familiar and better able to resolve;" (2) some of the same issues are present in both the circuit court case and the instant case, and two Courts could disagree resulting in inconsistent judgments;" and (3) an "alternative, superior remedy

4

2:11-cv-14102-SFC-MKM   Doc # 28   Filed 05/17/12   Pg 5 of 13   Pg ID 578

exists in state court." (Residential Mtn. to Dismiss at 6).

The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction. . . any court of
> the United States, upon the filing of an appropriate pleading, *may*
> declare the rights and other legal relations of any interested party
> seeking such declaration, whether or not further relief is or could be
> sought. Any such declaration shall have the force and effect of a final
> judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added). "[D]istrict courts possess discretion in determining

whether and when to entertain an action under the Declaratory Judgment Act, even when the suit

otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515

U.S. 277, 282 (1995).

In determining whether it is proper for a district court to exercise subject matter

jurisdiction over a declaratory judgment request, the Sixth Circuit applies the five factors

enumerated in *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984).

The five factors are:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in
> clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the
> purpose of "procedural fencing" or "to provide an arena for a race for
> res judicata;"
>
> (4) whether the use of a declaratory action would increase friction
> between our federal and state courts and improperly encroach on state
> jurisdiction; and
>
> (5) whether there is an alternative remedy which is better or more
> effective.

*Id.*

With respect to the fourth factor – whether the use of a declaratory action would increase friction between our federal and state courts – courts are to consider three additional sub-factors:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000); *see also Travelers Indem. Co. v. Bowling Green Professional Associates, PLC*, 495 F.3d 266, 271 (6th Cir. 2007).[2]

Residential contends that applying these factors to the instant case weighs in favor of this Court declining to exercise jurisdiction over this matter. Evanston argues to the contrary.

A. <u>A declaratory judgment would settle the underlying controversy before this Court and would clarify the legal relations in issue.</u>

The Court will address the first two factors together. Evanston contends that a declaratory judgment would settle the controversy regarding the scope of coverage issued by Evanston. Residential, however, focuses on the underlying lawsuit, and contends that "resolution of whether the intentional acts exclusion [of the Policy] applies in this case hinges on whether there was any intentional act on the part of [Residential] and Weddell. . . and this

---

[2]In *Travelers*, an insurer brought an action seeking a declaratory judgment that it had no duty to defend and indemnify an insured in a wrongful death action brought against the insured in state court. The parties did not raise the issue of subject matter jurisdiction in their appellate briefs. Nonetheless, the Sixth Circuit raised the issue of subject matter jurisdiction *sua sponte*. The court held that the district court abused its discretion by retaining jurisdiction over the action because the *Grand Trunk* factors weighed in favor of declining jurisdiction.

decision would require a determination of facts that are already being litigated in the underlying action." (Residential Mtn. to Dismiss at 13).

In *Scottsdale*, the Sixth Circuit concluded that this first factor weighs in favor of exercising jurisdiction when the only issue before the district court is whether an insurance policy provides coverage for an insured, and the insurer is not a party in the underlying state court action. *Scottsdale*, 513 F.3d at 556. Like in *Scottsdale*, the only issue before this Court is whether Residential is covered under the Policy for the acts of Weddell. Also like in *Scottsdale*, the insurer, Evanston, is not a party to the underlying lawsuit in state court.

Residential contends that the Court must make factual determinations that are already being considered by the state court in order to make its determination in this declaratory judgment action. The Court disagrees. In addition to various claims regarding Residential's representations of insurance coverage, Roberts' claims in the underlying lawsuit are based upon the allegation that Weddell intentionally converted property belonging to Roberts. Thus, when determining whether the Policy provides coverage for Residential with respect to the underlying lawsuit – the only issue currently before the Court – the Court would proceed on the assumption that Weddell's actions that gave rise to the underlying lawsuit were intentional. There are no issues of fact that need to be determined by the state court before this Court can rule on whether the Policy provides coverage to Residential under the circumstances of the underlying case.

"The second factor in the *Grand Trunk* analysis is closely related to the first factor and is often considered in connection with it." *Scottsdale*, 513 F.3d at 557. "[I]t is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Id.* Evanston has included all of the parties to the underlying lawsuit as

7

defendants in this declaratory judgment action.  Thus, a declaratory judgment would clarify the legal relationship between Evanston, Residential, and Weddell as it relates to coverage under the Policy.  Accordingly, the Court finds  that these first two factors weigh in favor of retaining jurisdiction.

      B.      <u>There is no procedural fencing or race for *res judicata*.</u>

The third factor of the *Grand Trunk* analysis is "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata.'" *Grand Trunk*, 746 F.2d at 326.  There are no facts in this case that demonstrate that Evanston has engaged in "procedural fencing" or has attempted to win a race for *res judicata* by filing its complaint with this Court.

      C.      <u>A declaratory judgment would increase the friction between federal and state court.</u>

The fourth factor to consider is whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction.  This factor weighs heavily in favor of declining jurisdiction.  With respect to this factor, the Court considers the three sub-factors established by the Sixth Circuit in *Scottsdale*.

First, as stated above, the facts of the underlying lawsuit are not vital to an informed resolution of the coverage dispute between the parties.  Evanston's position is that Weddell's actions that resulted in the property loss were intentional, as alleged by Roberts in her First Amended Complaint, and therefore the coverage issues presently before the Court are questions of law.  Again, in determining whether Residential is covered under the Policy, the Court would

proceed under the assumption that Weddell's actions were intentional.[3]

The second and third sub-factors in this analysis weigh heavily in favor of declining to exercise jurisdiction. The insurance coverage dispute currently before the court is a matter of state law. The Sixth Circuit has often observed that state courts are in a better position to interpret state law issues. *See Travelers*, 495 F.3d at 272. The Sixth Circuit has also stated, "when an insurance company '[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district court on these issues would not offend principles of comity.'" *Scottsdale*, 513 F.3d at 560 (quoting *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)). That is not the case in this action.

In the underlying lawsuit, Roberts' First Amended Complaint includes several allegations related directly to the scope of Residential's insurance coverage. For example, in Count II of Roberts' First Amended Complaint, which alleges negligence against Residential, Roberts' states:

> Bridges owed [Roberts] a duty to verify and be certain that Weddell carried [an insurance policy], and was in fact was[sic] "bonded and insured."

> [Roberts] is informed and believes that during the period relevant to this Complaint, Weddell carried no insurance on her own whereby she was "bonded and insured."

> Notwithstanding any arrangement which may have existed as

---

[3]There may become a future issue with regard to Evanston's duty to defend and indemnify Residential in the underlying lawsuit if the state court determines that Weddell did not, in fact, convert Roberts' property. This issue is not currently before the Court, but is an additional factor that weighs in favor of permitting the state court to determine the scope of coverage to Residential under the Policy.

> between co-Defendants Bridges and Weddell, Bridges owed [Roberts] a duty to be certain that Weddell was "bonded and insured" in accordance with the representation which it made to [Roberts].

(Underlying Complaint at ¶¶ 32-34). Similarly, in Count II of her complaint, Roberts alleges

negligence against Weddell, stating:

> If in fact it was the responsibility of Weddell to carry insurance such that she was "bonded and insured," Weddell owed [Roberts] a duty to carry such a policy.

> [Roberts] is informed and believes that during the period relevant to this Complaint, Weddel carried no such insurance of her own whereby she was "bonded and insured." Accordingly, Weddell breached a duty of care which she owed to [Roberts].

(Underlying Complaint at ¶¶ 38-38). In Count IV of her complaint, Roberts alleges a claim for

breach of contract against Residential:

> By having represented to [Roberts] that its caregivers are "bonded and insured," Bridges promised and represented, as part of the Agreement, that in the event of loss caused by its caregiver(s) as described herein, Bridges carries insurance sufficient to cover the loss.

> By having represented to [Roberts] that its caregivers are "licensed and bonded," Bridges assured [Roberts] of recovery for loss against a responsible person or persons whom it employed or who acted as its agent, regardless of whether the loss was caused by negligence or intentional acts.

(Underlying Complaint at ¶¶ 42-43). Finally, in her claim against Residential for violation of the

Michigan Consumer Protection Act, Roberts alleges;

> By causing a probability of confusion or misunderstanding as to the existence or source of the insurance under which Weddell was "bonded and insured," in violation of Section 903(1)(a).

> By causing a probability of confusion or of misunderstanding as to [Roberts'] legal rights, specifically, regarding the existence of bonding insurance and what legal protections to which Plaintiff was

10

entitled in the event of loss caused by its caregivers, in violation of
Section 903(1)(s);

By failing to reveal a material fact regarding whether and by whom
its caregivers were "bonded and insured," in violation of Section
903(1)(s);

(Underlying Complaint at ¶ 52).

Thus, based upon these allegations, the underlying lawsuit raises issues pertaining
directly to the existence and scope of insurance coverage for Residential and Weddell, as an
employee of Residential. According to the parties, discovery in the underlying actions is well
underway, and at this point, may have already been completed. These issues of coverage will
presumably soon be taken up the state court. Regardless of whether coverage actually exists, the
issues of Michigan law in this action significantly overlap with issues of law presently before the
state court. Furthermore, there are no federal law issues in either this case or the underlying
lawsuit. Therefore, the Court agrees with Residential that the state trial court is in a better
position to evaluate the insurance coverage dispute because there is a significantly close nexus
between the legal issues before the state court[4] and the legal issues before this Court.

The Court concludes that exercising jurisdiction over the instant action would increase
friction between the federal and state courts and improperly encroach on state jurisdiction. This
factor weighs heavily in favor of declining to exercise jurisdiction.

D. Alternative remedies are available.

The final *Grand Trunk* factor that the Court must consider is whether there is an

---

[4]Evanston notes that Roberts amended her Underlying Complaint to include these
allegations after Evanston filed its Complaint for Declaratory Relief in this Court. Regardless
the timing of Roberts' allegations, these state law issues are now properly before the state court.

11

alternative remedy that is more effective.  As stated by Residential, Evanston may re-file its declaratory judgment action in Oakland County Circuit Court, where the underlying lawsuit is pending.  Because there are overlapping issues of state law regarding insurance coverage under the Policy, the state court forum where these issues are currently pending would be more effective and prevent any contradictory rulings on the existence of coverage.  This factors also weighs in favor of declining jurisdiction.

      E.  Balancing the factors:

Considering all of the *Grand Trunk* factors discussed above, the Court declines to retain subject matter jurisdiction over this declaratory judgment action.  The fourth *Grand Trunk* factor weighs heavily in favor of declining jurisdiction.  The overlap of legal issues currently before this Court and the state court is too great and would result in an encroachment on state jurisdiction.

II.    Cross-Motions for Summary Judgment:

In its motion for summary judgment, Evanston contends that there is no coverage to Residential or Weddell under the Policy, and seeks to have this Court declare that Evanston has no duty to defend or indemnify Residential or Weddell in the underlying lawsuit.  Residential takes the opposing position in its cross-motion for summary judgment.

Because the Court declines to retain jurisdiction over this action, the Court need not rule on the merits of the parties' cross-motions for summary judgment.

**CONCLUSION**

For the reasons set forth above, IT IS HEREBY ORDERED that Defendant Residential Private Care's motion to dismiss (D.E. No. 8) is GRANTED.

12

IT IS FURTHER ORDERED that Plaintiff's motion for summary judgment (D.E. No. 17) is DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendant Residential Private Care's cross-motion for summary judgment (D.E. No. 19) is also DENIED AS MOOT.

IT IS FURTHER ORDERED that Plaintiff's Complaint for Declaratory Relief is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

S/Sean F. Cox_____
Sean F. Cox
United States District Judge

Dated:  May 17, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 17, 2012, by electronic and/or ordinary mail.

S/Jennifer Hernandez_____
Case Manager

13